HARRISON R. JOHNSTON, Appellant, *v.* THOMAS F. DONVAN and Others, Respondents.

*Evidence — when a seal will not be held to be conclusive — when two sealed instruments may be shown by parol evidence to have been intended to constitute one transaction — the taking of a deed in the name of one partner does not exclude proof that it was a firm transaction.*

In an action to foreclose a mortgage executed by Thomas F. Donvan to John H. Carnes to secure a portion of the purchase-price of the property described in it, which mortgage was assigned by the mortgagee to Charles A. Johnston, and by him to the plaintiff in this action, it appeared that, before the execution and delivery of the deed of the property to the mortgagor, Thomas F. Donvan, Silas J. Donvan, who was acting as attorney for his brother Thomas, discovered that an action had been commenced by the United States, in the Circuit Court of the Southern District of New York, against Harrison R. Johnston (the plaintiff in the present action), in which an attachment was issued and levied upon this property, and declined to take the title; that an agreement was thereafter made between himself and Charles A. Johnston, the assignee of the mortgage, by which it was agreed that the notice of the pendency of the action, and the attachment levied upon the property, should be removed and can-

celed of record before the 1st of May, 1880, and in that case only was the interest to accrue and run on the bond; and it was further agreed that if such attachment was not removed or canceled by that day interest should begin to run on the said bond only from the time that the same was removed or canceled of record, and that, in case the United States government should successfully enforce its action against the property, then, at the option of Donvan, the bond and mortgage should become absolutely void.

On May 21, 1884, a judgment was entered in favor of Harrison R. Johnston, the defendant therein in the action brought by the United States, from which the United States appealed to the Supreme Court of the United States, where that action is now pending.

Upon the trial it was proved that a conveyance of the property had been made to Carnes without consideration, and that it was held by Carnes subject to the direction of Charles A. Johnston, the object of it being to exempt the property, if possible, from any attachment on the part of the United States government against Harrison R. Johnston; and, also, that Thomas F. Donvan, the grantee in the deed, and also the mortgagor, was in partnership with Silas J. Donvan, carrying on the business of builders, and that the contract for the conveyance of the premises was taken by Silas J. Donvan, in the name of Thomas F. Donvan, and that Silas J. Donvan was present and acted throughout in the negotiations for the purchase of the property, and in making the agreement for the suspension of interest on the mortgage debt, until the attachment and *lis pendens* should be removed, and in so doing acted solely for the firm, and that the property was purchased in this manner for the benefit of himself and brother, as partners.

*Held*, that the finding of the referee on this state of facts that the defendant's defense, based upon the agreement executed between Charles A. Johnston and Silas Donvan, had been established, should be affirmed.

That the fact that this agreement, as well as the contract for the sale and purchase of the land, were under seal, did not prevent the agreement, which was made between Charles A. Johnston and Silas J. Donvan, from becoming effectual.

*Briggs* v. *Partridge* (64 N. Y., 357) and *Williams* v. *Gillies* (75 id., 197) distinguished

That, for the purpose of connecting the agreement with the mortgage, evidence was admissible to prove the fact that the property had been bought for the benefit of the partnership.

That, taking the deed and giving the mortgage in the name of one of the partners were not facts entitled to so much effect in the case, as to exclude proof as to what was the real nature of the transaction.

*Fairchild* v. *Fairchild* (64 N. Y., 471) followed.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee in the office of the clerk of the city and county of New York on January 21, 1888.

*Hamilton Wallis*, for the appellant.

*Payson Merrill*, for the respondents.

Daniels, J.:

The action was instituted to foreclose a mortgage executed upon unimproved premises in the city of New York, by Thomas F. Donvan to John H. Carnes, to secure the sum of $15,000, with interest at six per cent, payable semi-annually. A bond was executed and delivered by the same party to the mortgagee, conditioned for the payment of this sum of money. The mortgage was assigned by Carnes, the mortgagee, to Charles A. Johnston, and by him to the plaintiff in this action. It was given for the purchase-price of the property described in it.

A contract had previously been made between Charles A. Johnston and Thomas F. Donvan for the sale and conveyance of these premises, but before the execution and delivery of the deed it was found that an action had been commenced by the United States, in the Circuit Court for the Southern District of New York, against Harrison Johnston, and an attachment issued and levied upon this property, and a notice of the pendency of the action had been filed in the office of the clerk of the city and county of New York against the same property. When these facts were discovered by Silas J. Donvan, who, as attorney for his brother, subscribed the contract for the purchase of the land, he declined to take the title, and an agreement was thereupon made between himself and Charles A. Johnston, by which it was agreed that the notice of the pendency of the action and the attachment levied upon the property should be removed and canceled of record before the 1st of May, 1880; and in that case only was the interest to accrue and run on the bond as it was made payable therein. It was further agreed "if said attachment and *lis pendens* are not removed or canceled by said first of May next, interest shall begin to run on said bond only from the time the same are removed or canceled of record; and the agreement contained the further stipulation that in case the United States government should successfully enforce its action against the property, then, at the option of Donvan, the bond and mortgage should become absolutely void; but if the attachment and *lis pendens* should be removed, or canceled of record at any time after the 1st of May, 1880, the bond should only become due and payable in one year from the time of such cancellation. It was proved upon the

trial that on the 21st of May, 1884, judgment had been entered in favor of the defendant, Harrison Johnston, in the action brought by the United States; and an order was made in June of the same year that the *lis pendens* should be discharged unless within twenty days thereafter the plaintiff in the action should sue out a writ of error. Within that time the writ of error was sued out, and that action is now pending in the Supreme Court of the United States. It was further proved that Charles A. Johnston, the vendor in the contract for the conveyance of the lands, conveyed the premises to John H. Carnes, who executed the deed in performance of the contract and received the bond and mortgage; but this conveyance to Carnes was made without consideration and for the convenience and subject to the direction of Charles A. Johnston, the object of it being to exempt the property, if possible, from any attachment on the part of the United States government against Harrison Johnston.

The proof also showed the fact to be that Thomas F. Donvan, the grantee in the deed, and also the mortgagor, was in partnership with Silas J. Donvan, carrying on the business of builders, and that the contract for the conveyance of the premises was taken by Silas J. Donvan in the name of Thomas F. Donvan; and that Silas J. Donvan was the person who acted throughout in the negotiations for the purchase of the property and in making the agreement for the suspension of interest on the mortgage debt until the attachment and *lis pendens* should be removed. In this business his testimony was that he acted solely for the firm, and that the property was purchased in this manner for the benefit of himself and his brother, as partners. The referee, on this state of facts, held the defendant's defense to have been established under the agreement executed between Charles A. Johnston and Silas J. Donvan. This agreement, as well as the contract for the sale and purchase of the land, were under seal, and, on account of that fact, its authority, as a modification of the bond and mortgage, was resisted and denied by the plaintiff. It was supposed upon the trial, and the same position is advanced in support of the appeal, that the principle followed in the decision of the cases of *Briggs* v. *Partridge* (64 N. Y., 357), and *Williams* v. *Gillies* (75 N. Y., 197), prevented the agreement which was made between Charles A. Johnston and Silas J. Donvan

from becoming operative or effectual in any manner in this respect. But neither of these cases sanctions any principle preventing the effect to be given to this agreement, which it was the object and design of the parties it should have over the bond and mortgage. They do settle the proposition that in an action at law upon a sealed instrument executed by one party, in the absence of anything in the instrument indicating that it was done for another, that evidence cannot be received to bring in, or enforce, the covenant against any other person, but that the rights and obligations of the parties must be determined according to the language and import of the agreement as it may have been made and sealed by the parties. The present case stands in no way in conflict with this principle, for the action has not been brought at law upon the agreement or to enforce either of its covenants. The agreement has, on the contrary, been brought into the case by the defendants to indicate their equitable rights and prove what, under the circumstances, was the intention by which the parties were to be governed in the observance and enforcement of the bond and mortgage. and to discover and carry into effect the intention and design of the parties, the court is entitled to place itself precisely in the position occupied by them at the time when these instruments were made and delivered. And the agreement made in this manner is one of the facts to be considered and consulted as an indication of the intention and design by which the parties consented to be controlled in the enforcement of the mortgage.

For the purpose of connecting the instrument with the mortgage, evidence was admissible to prove the fact that the property had been bought for the benefit of the partnership. Taking the deed and giving the mortgage in the name of one of the partners were not facts entitled to so much effect in the case as to exclude proof that this was the nature of the transaction. For, in *Fairchild* v. *Fairchild* (64 N. Y., 471), it has been held that the fact of a purchase of real estate being made in the name of one partner will not preclude the firm from proving that the purchase was made in reality by and for its benefit. In adopting, following and applying this principle the courts observe the liberal practice sustained and adhered to in equity. It declines to be bound by technical legal rules, and endeavors to discover and enforce the transactions of par-

ties as they themselves have framed them and design they should be carried into effect. This has long been a peculiar attribute, sanctioning the proceedings in courts of equity, which may adjust their decrees so as to meet the exigencies of the controversies they may be called upon to rectify and enforce. And they may vary, qualify, restrain and model the remedy so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of all the parties. "The relief to be awarded adapts itself to the special circumstances of each particular case, adjusting all cross-equities and bringing all the parties in interest before the court." (1 Story Eq. Jur. [5th ed.], §§ 27, 28, 437.)

In *Flagg* v. *Mann* (2 Sum., 486) it was said, in the announcement of this principle, that "courts of equity do not regard the forms of instruments, but they look to the intent, and give to the acts of the parties the construction which that intent justifies and requires, as far as, consistently with general principles, it can be done" (id., 530); and a court of equity will wholly disregard the form of the transaction, and look to the substance (id., 540); and that was all that was done in the disposition of this action at the trial. That a seal will not be held to be conclusive in a court of equity, as it is required to be in a court of law, is further illustrated by the case of *Stoddard* v. *Whiting* (46 N. Y., 627), when it was held, and is now undoubtedly the law, that a deed, absolute upon its face, may be shown by oral evidence to have been intended only as a security, and in that manner converted into a mortgage, which obviously could not be done if the strict legal rules relating to sealed instruments were considered to be conclusively binding in courts of equity. What these tribunals will look at is the purpose and design of the parties, so far as it may be gathered from the agreements or covenants which they have made, or which have been made, with their authority and for their benefit; and, to carry such covenants into effect, evidence may be received connecting one agreement with another. This general principle was considered in *Coddington* v. *Davis* (1 Comst., 186), where the intention of the parties was derived, as it was in this instance, from different instruments in writing; and in *Wilson* v. *Randall* (67 N. Y., 338) the law was declared to be that "the contract may be read in the light of surrounding circumstances, and if the language employed is uncertain and ambig-

uous, they may afford a key to the meaning and intention of the parties, but they cannot be used to contradict what is expressed; but the rule does not confine the court, in constructing a writing, to the very instrument in question. Other contemporaneous writings between the parties relating to the same subject-matter are admissible in evidence to explain or qualify the agreement before the court" (id., 341); and this principle was acted upon and followed in *Carley* v. *Potts* (24 Hun, 571), and it is broad enough to permit the proof to be taken which was received at the trial, showing that Silas J. Donvan, in the negotiation which led to this agreement, and n the taking of the agreement itself, was acting on behalf of the mortgagor, as well as himself, as he plainly did in taking the agreement, in the first instance, for the sale and conveyance of the property, which was executed in the name of his brother, the other partner, by himself as attorney. The evidence left no substantial dispute as to the facts in the case, and it was all admissible for the purpose of disclosing and connecting the different features to the transactions, and presenting them in such a manner as to entitle them to receive the effect to which, in the judgment of the court of equity, they should be allowed to have. The case was correctly disposed of at the trial, and the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment affirmed, with costs.